Southard J.
remarked. I should have felt better satisfied to have taken a little longer to look into this matter; but, as I now see no cause to doubt, I am willing to yield to the request of the parties. Four questions seem to have been pressed upon the consideration of the court, by the argument of this rule. 1. whether the trial ought to have been postponed at the circuit ? 2. Whether the possession of Barber, was such as to render the plaintiff’s recovery illegal ? 3. Whether the contents of the handbill, were a proper subject of consideration, in assessing the damages ? And 4. Whether the damages were so excessive, as to call for an interference with the verdict. I will endeavour to express my view of each of these points.
*And 1. As to the postponement of the trial. A party who has encountered the expense of a preparation for the circuit, is entitled to a trial, unless his adversary can satisfy the court, that he has exhibited due diligence on his part, but has not been able to come prepared, and that justice will probably not be done, if the trial progresses. In ordinary cases, upon a first application for a postponement, an affidavit of the absence of a material witness, who has been legally subpoenaed, is sufficient. But a second or third application, by the same party, naturally induces a suspicion, that he is not so often unfortunate, but is *612 seeking delay; and then, more particularity, and more evidence is required. But whether it be the first or third application, it is always addressed to the sound discretion of the court, and is refused or granted on such terms as justice to the parties requires. (a) The judge before whom it is made, has, in the manner and appearance and acts of the applicant, means of a correct decision, with which the court at bar, cannot be furnished. His determination of the question, therefore, affords strong presumption of correctness, but it is not conclusive. If a clear case of mistake on his part, be made out, and we perceive that injustice has been done, the evil will be remedied by a new trial. But the inquiry always is, has injustice been done ? has the party been injured ? If he have not, no good reason can be given, why he should receive the favour of trying his cause over again.
In the present case, the defendant supposes that the Chief .Justice erred on two points. 1. On account of the variance in the word Thomas, between the circuit record and the copy of the declaration, furnished to him by plaintiff’s attorney. (b)
I think there is more than one sufficient answer to the defendant’s complaint, on this point. The record, throughout uses the word Thomas; the copy of the declaration does the same: the abbreviation which is subscribed to the hand-bill is not a word of different signification, but means precisely the same thing. The defendant could not, therefore, have been left in doubt, or been deceived, by the copy furnished ; and I do not think that the variance would have been fatal in any ordinary case of pleading, even if it existed between the evidence and the record. It is very clear he has not been deprived of any possible means of preparation and defence; nor has he been, in the slightest degree, injured in the result. The record and the evidence correspond. *But 2. The provisions of our law, and the course of our practice, require the defendant to look to the files of the court, not only to see when the declaration is filed, but what it contains. *613 And if lie chooses to depart from his interest and duty, in this respect, and derive his information from other-sources, he must take the consequences upon himself. If he relies upon copies of pleadings furnished by any person but the clerk, and he is led into error, as the law gives him no pledge of correctness, he must not apply to the court to relieve him from the effects of his own -want of care and caution. In this case also, the defendant had much to put him on his guard, and to prevent surprise. The circuit record had been twice before carried down, and the hand-bill had been presented to his observation, on a still more important occasion. He ought not to have been negligent in examining it.
The second reason offered for postponing the trial, was the absence of the witness. I cannot help believing that there^is more in the fact, that the fees were not left with the copy of the subpoena, than seemed to be supposed by the counsel, on either side, from the manner of their argument. It is an express requirement of our statute, that the fees shall be paid, and the amount is fixed. The third section of the act concerning witnesses, Pat. 401, provides, “ that if any person on whom lawful process shall have been duly served, to testify &c. and to whom shall have been paid or tendered, at the time of such service, fifty cents, if he is to serve in the county &o. shall not appear according to the tenor of said process, having no lawful or reasonable let or impediment to the contrary, he shall, for every offence, forfeit” &c. Can wo, under the words of this section, consider a witness lawfully subpoenaed for the purpose of punishment for non-attendance, unless the fee be paid or tendered ? Clearly not. And can we say that the process has not been legally served, when we are about to punish the witness, and yet that it has been legally served, when we are inquiring into the default of the party, and determining whether he has used due diligence? that it is legal for one purpose and not for another? This would seem an unfit state of things. Besides it is altogether reasonable, that this provision of the statute should be strictly complied with. The witness comes to render a service to the party; his compensation is fixed; he often needs it, to *614 bear his expenses, and he ought *to receive it. He is not bound to serve first, and rely upon the fairness of the party or a suit at law, to obtain his fee afterwards. In England no witness is bound to appear at all, even if subpoenaed, unless his reasonable expenses be tendered to him; nor if he does appear, is he bound to give evidence, until such charges are actually paid to him. 3 Bl. Com. 369. 1 Str. 510. 2 Str. 1150. Here the statute fixes the sum to be paid. A party, therefore, seems to me not regularly to serve his process, but 'to stop short of strict’ and legal diligence, when he does not deliver or tender to the witness his fee, at the time of serving the writ. A delivery of a subpoena, or leaving a copy without it, ought not to avail where the service is brought in question. Wherever the copy is left with a view to produce attendance, the money ought also to be left. But the question here seems rather to be, whether the defendant was bound, under the information he received, to leave either the one or the other. Passing by this difficulty, therefore, let us look further into this point, and I think enough will appear to justify the decision of the Chief Justice, and to prevent us, from according to the defendant, the fa vour which he asks for this cause.
It is to be recollected that this was the third effort at postponement and for the same cause, the absence of a material witness. The trial was therefore properly ordered on. 1. Because the process to subpoena the witness, ought to have been taken out earlier, and greater diligence exhibited. 2. It was not shewn that the witness was expected by the next term, or at what particular time. It might be that he was expected at a period to which the trial could not reasonably be postponed. 3. The defendant ought to have shewn that the witness had not returned from the westward, and could not be brought before the court at that time. All the information given of his absence, was the declaration of his wife, that he was gone and was not expected back in time ;• but there is no proof that he was not then at home. For aught that appears, he might have been there, and had the process been served on him and the fee delivered, would have attended. 4. The materiality of his evidence was not sufficiently shewn. *615 It was sworn to in the same way as in an ordinary application for a first postponement. The defendant should have - done more. He should have satisfied the judge, by a disclosure of what he intended to prove by him, that what he knew was material to the defence. Nor is it a sufficient answer, that the court did not require this to be done. It was not the business of the court to prescribe in what way, and for what reasons, the defendant should make his application ; but to decide upon its merits as he presented it. But in my view, the most important consideration, on this question, still remains. The foundation of this motion, is the injury which has been done to the defendant? How has he been injured? By being deprived of his evidence. If this witness could say nothing in his favour, he has not been injured, and there is no ground for this motion. Could this witness say any thing in his favour? We know nothing on this point. It rests upon the allegation of the defendant alone. Now we do not sustain such rules as this, and grant new trials upon the allegation of parties. We are as little informed whether the witness has returned and his testimony could now’ be procured. I am not willing to disturb a verdict, to put the parties to the expense of another hearing before a jury, without a full conviction that the verdict might, in some degree, be affected by the evidence which was excluded. The defendant has no confidence in the value of this evidence, or he has been strangely negligent in not exhibiting it to us. Upon this first question, therefore, I do not think the Chief Justice decided incorrectly; and if I believed that he did, I should still be opposed to this rule, unless, from sufficient evidence, I was convinced that the defendant had been injured by the absence of his witness, and there was reasonable ground to believe that his testimony might have some operation upon the verdict. We have no such evidence.
2. The second question to be considered is, whether the possession of Barber was such as to make the recovery of the plaintiff illegal ? But little need be said upon this question. If I correctly understand the evidence, Barber is a very near connexion of the plaintiff; he uses one of the rooms in his office for the purpose of transacting the various *616 business in which he is engaged, without any right in it authority over it, except what is derived from the implied or express permission of the plaintiff. He pays no rent and claims no property or possession, which he could demand or enforce by legal means. Like a guest, he uses, possesses, and enjoys the room, through the friendship • and hospitality of his father-in-law. If this be so, the question is at an end. Can it be believed that this plaintiff, because he kindly permits a relation to use his property along with him, loses his right *and control over that property, and cannot bring a suit for injury done to it, without the permission of that relation and joining him in the action ? It will not seriously be contended. Why should Barber unite in the action? has he been injured? can he recover damages? did the plaintiff sue for or recover damages for what he has suffered on this occasion? Not at all. Why then disturb the verdict on this account ? Besides, if Barber had a possession in common, and the defendant entered upon it for the sole purpose of inflicting on the plaintiff alone, an injury like the one complained of, I have no idea that he must necessarily be united in the action.
3rd question. Were the contents of the hand-bill a proper subject of consideration with the jury ? There is no doubt that they were considered, and formed the principal item in the heavy account which was found against the defendant, and if they ought to have been excluded from the view 'of the jury, I cordially agree with his counsel that the damages are enormous, are outrageously excessive: five thousand dollars, for passing over a gravel-walk of half a dozen yards in length, and putting a man’s foot upon the sill of the door, would be intolerable, no matter who the parties, or what their situation. But is this the real case ? Of what does the plaintiff complain in his declaration? He complains that the defendant illegally entered upon his premises and put upon his door, an insulting and libellous hand- ■ bill.. Is this hand-bill to be regarded as part of his cause of complaint, or is it not ? Much ingenuity was certainly displayed by the counsel in the discussion and application of the cases to this question, but the conclusion at *617 which they arrived, does not very well correspond with the principles of correct pleading, or the law of evidence. I am not here able to examine the cases, nor perhaps is it necessary: we may come to a satisfactory conclusion without. I understand it to be admitted, that it was proper to charge and prove the putting up of the hand-bill, because it was of the same character with, and a part of, the the trespass; but not proper to charge or. prove the contents of the hand-bill, because, they do not partake of the character of the trespass, and a remedy for them must be sought by an action on the case for the libel or slander.
But I do not perceive how the two are to be separated. The plaintiff complains of a trespass. The jury are to determine the *extent of it and the injury resulting from it. To do this, they must not only know what was done, but as far as possible the motives with which it was done. How will they learn them ? By being informed that defendant passed over the gravel-walk? No, for this was not all he did; and this he might have done with the best intentions, and have committed no punishable trespass. That he put his foot upon the sill and left a paper there ? No, for these acts might have been, and no harm done to the plaintiff. But they might also have been, and the plaintiff deeply wounded by them. How is the jury then to say whether he was or was not injured ? How are they to determine whether the defendant came as friend or foe? to leave a paper containing information salutary to his safety or poisonous to his reputation and peace ? to commit a trespass or to do a kindness ? It can only be done by looking into the contents of the hand-bill; and shall the jury be compelled to decide, and yet precluded from this only means of judging ? Suppose the contents oj the bill had been of a kind and friendly nature, and designed expressly for benefit to the plaintiff, would not the defendant have been permitted to shew it ? and would not the jury in such case have refused the plaintiff any thing ? yet the rule must operate both ways. A man enters my house and strikes my child: I may charge arid prove both acts, and he must compensate for both. But he not only enters my house and strikes my child, but when he does it, adds the most malignant and unfounded slanders *618 of him. May I not charge or prove these, to shew the with which he did it and the extent of the wrong? I may, and the jury will estimate his acts accordingly. I understand the true rule on this point to be this; in trespass, you may charge and prove the whole circumstances accompanying the act, and which were a part of the res gestos, in order to shew the temper and purposes, with which the trespass was committed and the extent of the injury. A contrary rule would certainly produce the effect argued by the plaintiff’s counsel. It would take away all distinction from acts of trespass. And if this be the rule, its application to the present case is not difficult. The hand-bill was properly proved, and was good evidence in estimating the damages.
4. The remaining question to he considered is: are the damages excessive? suchas call for our interference, (a)
In giving an answer to this question, we cannot act safely un*iil we satisfy ourselves what is the import of that hand-bill. On the part of the defendant, his counsel, at the trial, and again here, allege that the letter was designed to obtain a peaceable and friendly interview; an amicable explanation of serious wrongs which he had suffered from the hands of the plaintiff; and that the put- ' ting up the hand-bill was designed to bring it to the notice of the plaintiff, and thus enforce the meeting. And they appeared, among other arguments to prove their positions, to derive some confidence from the decision of this court, in the case of the State v. Gibbons, (b) That case has certainly been illy understood, if it be supposed that this court expressed the idea that this letter did not contain a challenge. The decision went on altogether - different grounds, and an expression of opinion on that point was carefully avoided; ojie of the court adding, “ whether challenge or not, is always a question for the jury, upon the whole evidence.” At the trial, the counsel for the plaintiff denied the conclusions in favour of the defendant. It was for the jury to pass.between them, and *619 the amount of their verdict is conclusive proof of the light in which they viewed it. They have doubtless considered the letter as a challenge, as a demand that the dispute should be ended with blood ; and putting it up, as proclaiming and posting the plaintiff at his own door, as one who had deeply and malignantly injured another, and had neither the honesty nor courage to give him satisfaction. If in this opinion of the jury, they had no evidence to support them, and there is clear and manifest error, though it was a matter within their province, we must correct their mistake. But I cannot perceive clear proof that they did err. The language of the letter itself; the manner of sending it; the printing and publishing of the hand-bill; the posting of it on the door ; and the language which he used to Ephraim, Ciarle; are all strong indications of the temper that was felt and the object aimed at, too strong for me here, and on this motion, to question the decision of the jury. The letter must be regarded as a challenge; sealing it to the door as designed to irritate, wound, and disgrace the plaintiff.
Having fixed what we are to consider as constituting the trespass, we may now form an opinion whether the damages are excessive. And here it is necessary for me to remark, that this is a case, most decisively within the province of the jury. It is not simply and alone a case for a tort done to property, the value of *which may be ascertained by evidence, and where there are fixed rules and principles to measure the damages ; but it is one of character, of sentiment, of feeling; one where the court is not entrusted with the power to estimate the wrong, but the jury must exercise their discretion; a case depending much on the situation and circumstances, as well of the party injured, as of him who did the injury. In such a case, although the verdict may be set aside, if the damages given are so unreasonable as to indicate a want of ordinary discretion in the jury, so outrageous as to exhibit passion, prejudice, partiality or corruption, yet do I feel no authority to touch it, unless they be evidently such. Because I may feel that if I had been a juror, I should have discharged my duty by giving less, I am not therefore at liberty to say that less shall be given. This *620 power is entrusted, and I think wisely entrusted, to other Considering then the character and circumstances 0f fjie parties, and the nature of the trespass complained of, are the damages enormous, outrageous, excessive ? I am not satisfied that they are. In the first place, the plaintiff is a man who has long filled a respectable rank in the estimation of the public and the honours of his country, and whose connexions and influence extend far and operate largely upon society. The defendant too, claims the possession of learning, of talents and of influence ; was once very extensively engaged in the study and the practice of the law; understands well the rights of others, and his obligations to respect them; and his example ought therefore to have influence. When then the jury believe that an outrage has been committed by such a man as the defendant upon such an one as the plaintiff, it is their duty to both, and for example’s sake, sternly to frown upon and liberally to punish it. In the second place, the defendant was admitted upon the argument and is well known to possess great wealth. By him, therefore," a light verdict would not be regarded. That which would oppress a poor man, he would not feel. In the third place, the trespass is one of peculiar aggravation. The publication of such a hand-bill can only be esteemed an effort to use the corrupted sentiment of the public on the subject of duelling, to drag the plaintiff to reproach, contempt and infamy: nay more, in this instance, it was approaching the residence of the plaintiff to disgrace him in the eyes of his own family; to stab him, .where.no medicine could cure the wound. This circum*stance I consider most highly aggravating, and most completely justifying the exemplary damages which are given. There is a dignity,' a sacredness about a man’s home, which enmity however irreconcilable, a thirst for revenge however keen and however excusable, ought never to be permitted to approach. Assail an enemy where we will; reprobate, expose and publish him as we may, still that place, where his sensibilities, his pride and his joys meet, ought to be secure: the inmates of his residence should never be made to feel our hate or his wounds. Sitting then where I do, and called to pass a judgment *621 upon the damages which ought to be given in a case like this, I do not hesitate to say, that the verdict ought to stand. It is not only correct in itself, but deeply important for the example which it has set. The disposition which prevails among us to ‘ stanch our wrongs, real and imaginary, with the blood of our adversaries, has called long, but in vain, for something sufficiently powerful to repress and control it. It has spurned ridicule, disregarded reproof, and mocked at religion. Something, however, is to be hoped from verdicts like this, if they carry with them the public approbation. But if when a man who is challenged, has the firmness to appeal to a jury, his appeal is rendered ineffectual by the court, who ought so to administer justice as to repress crimes and control the passions, that hope too is gone; and who can measure the result? It is not such as I am willing to promote.
On all the questions, therefore, I think the defendant wrong, and that the rule for a new trial should be discharged.
Kirkpatrick C. J.
declared his entire concurrence, on all the points.

 See Stokes vs. Garr, 2 Har. 451. Fuller ads. Den, Saxton, Spen. 61. State vs. Zellers, 2 Hal. 220.

 Probasco vs. Probasco, Pen. *1012. Youngs vs. Sunderland, 3 Gr. 32.

 See Thompson vs. Morris Canal, 2 Har. 480. Berry ads. Vreeland, 1 Zab. 183. Winter vs. Peterson, 4 Zab. 524. Phillips vs. Phillips, 5 Vr. 208. Vunck vs. Hull, Pen. *815. Allen ads. Craig, 1 Gr. 294.

 State vs. Gibbons, 1 South. 40.